IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

ERIC SABATINI,

    Plaintiff,

v.

EXTRACTION OIL & GAS, INC.,
THOMAS B. TYREE, JR.,
BENJAMIN DELL,
MORRIS CLARK,
CARRIE M. FOX,
CARNEY HAWKS,
MICHAEL WICHTERICH, and
HOWARD A. WILLARD, III,

    Defendants.

**COMPLAINT AND JURY DEMAND**

Plaintiff Eric Sabatini ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Extraction Oil & Gas, Inc. ("Extraction" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which the Company will merge with Bonanza Creek Energy, Inc.

("Bonanza") through Extraction's subsidiary Raptor Eagle Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On May 10, 2021, Bonanza and Extraction issued a joint press release announcing that they had entered into an Agreement and Plan of Merger, dated May 9, 2021, to combine Extraction and Bonanza (the "Merger Agreement"). Under the terms of the Merger Agreement, each Extraction stockholder will be entitled to receive 1.1711 shares of Bonanza common stock for each Extraction share they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $2.6 billion.

3. On September 28, 2021, Extraction filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Extraction stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) Extraction's and Bonanza's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Petrie Partners LLC ("Petrie Partners"); and (ii) the background of the Proposed Transaction. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Extraction's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and/or omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Extraction is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Extraction common stock.

9. Defendant Extraction is a Delaware corporation with its principal executive offices located at 370 17th Street, Suite 5200, Denver, Colorado 80202. Extraction is an independent energy company differentiated by its financial, operational and governance model. The Company's common stock is traded on the Nasdaq Global Select Market under the ticker symbol "XOG."

10. Defendant Thomas B. Tyree, Jr. ("Tyree") has been Chief Executive Officer

("CEO") and a director of the Company since January 2021. Defendant Tyree previously served as Executive Chairman of the Board from February 2020 to January 2021.

11. Defendant Benjamin Dell ("Dell") is Chairman of the Board and has been a director of the Company since January 20, 2021.

12. Defendant Morris Clark ("Clark") has been a director of the Company since January 20, 2021.

13. Defendant Carrie M. Fox ("Fox") has been a director of the Company since January 20, 2021.

14. Defendant Carney Hawks ("Hawks") has been a director of the Company since January 20, 2021.

15. Defendant Michael Wichterich ("Wichterich") has been a director of the Company since January 20, 2021.

16. Defendant Howard A. Willard, III ("Willard") has been a director of the Company since January 20, 2021.

17. Defendants identified in paragraphs 10 to 16 are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

18. Bonanza is a Delaware corporation with principal executive offices located at 410 17th Street, Suite 1400, Denver, Colorado 80202. Bonanza is an independent oil and natural gas company engaged in the acquisition, exploration, development, and production of oil and associated liquids-rich natural gas in the Rocky Mountain region of the United States. Bonanza's assets and operations are concentrated in rural, unincorporated Weld County, Colorado, within the Wattenberg Field, focused on the Niobrara and Codell formations. Bonanza shares trade on the

New York Stock Exchange under the ticker symbol "BCEI."

19.     Merger Sub is a Delaware corporation and a wholly owned subsidiary of Extraction.

**SUBSTANTIVE ALLEGATIONS**

**Company Background**

20.     Extraction is an independent oil and gas company focused on the acquisition, development and production of oil, natural gas and NGL reserves in the Rocky Mountain region, primarily in the Wattenberg Field of the Denver-Julesburg Basin (the "DJ Basin") of Colorado. Extraction was founded in November 2012 with the objective of becoming a Wattenberg focused company with acreage that has (i) low geologic development risk as a result of being within the vicinity of other successful wells drilled by other oil and gas companies, (ii) limited vertical well drainage relative to offset operators in a field with significant historical vertical activity, and (iii) higher oil content than was traditionally targeted when many operators first established their position in the field seeking natural gas production. The Company believes these characteristics enhance its horizontal production capabilities, recoveries and economic results. Extraction's drilling economics are further enhanced by its ability to drill longer laterals due to the Company's large contiguous acreage position, which Company management built through organic leasing and a series of strategic acquisitions. The Company operated 99% of its horizontal production for the year ended December 31, 2020 and maintains control of a large majority of Company drilling inventory. As of December 31, 2020, Extraction has assembled approximately 140,000 net acres of large, contiguous acreage blocks in some of the most productive areas of the DJ Basin, indicated by the results of the Company's horizontal drilling program and the results of offset operators (the "Core DJ Basin").

21.     On May 24, 2021, the Company announced its first quarter 2021 financial results and business highlights. Extraction emerged from bankruptcy on January 20, 2021 and achieved

crude oil, natural gas and NGL sales revenue of $292 million, as compared to $165 million during the first quarter of 2020. Net income for the quarter was $960 million, or $7.02 per basic and diluted share, compared to net income of $9 million for the prior year first quarter. Adjusted EBITDAX was $207 million for the combined first quarter, up 67% year-over-year.

**The Proposed Transaction**

22.   On June 21, 2021, Bonanza and Extraction issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> DENVER, May 10, 2021 -- Bonanza Creek Energy, Inc. (NYSE: BCEI) ("Bonanza Creek") and Extraction Oil & Gas, Inc. (NASDAQ: XOG) ("Extraction"), today announced that they have entered into a definitive agreement to combine in an all-stock merger of equals. The combined company, to be named Civitas Resources, Inc. ("Civitas"), will be the largest pure-play energy producer in Colorado's Denver-Julesburg (DJ) Basin, with an aggregate enterprise value of approximately $2.6 billion (based on the closing share prices of Bonanza Creek and Extraction on May 7, 2021).
>
> **TRANSACTION HIGHLIGHTS**
>
> - The merger will create a leading energy producer in Colorado's DJ Basin, a basin characterized by low operating costs, extensive infrastructure, ample takeaway, multiple producing horizons and responsible energy production.
> - The combined company will operate across approximately 425,000 net acres, with a production base of 117 thousand barrels of oil equivalent per day (117 Mboe/d, on a pro forma 1Q21 production basis).
> - The transaction is expected to be significantly accretive to free cash flow and other per-share metrics.
> - At closing, Civitas is projected to be one of most well-capitalized companies in the industry, with a leverage ratio below 0.3x pro forma 1Q21 Net Debt / 2021E EBITDA.
> - Civitas expects to achieve annual expense and capital savings of approximately $25 million.
> - Bonanza Creek's recently announced annual dividend of $1.40 per share is expected to be increased by Civitas to $1.60 per share effective at closing, with such increase representing a distribution of approximately half of the transaction synergies to Civitas' shareholder base.
> - Bonanza Creek President and Chief Executive Officer, Eric Greager, will serve as President and CEO of Civitas. Other senior leadership positions will be filled by current executives of Bonanza Creek and Extraction.

- Extraction Chairman of the Board, Ben Dell, will serve as Chairman of Civitas, and each of Bonanza Creek and Extraction will nominate four directors to Civitas' diverse, eight-member Board.
- Civitas will take to the next level an E&P business model that has been actively embraced by both Bonanza Creek and Extraction, defined by operational discipline, a strong balance sheet, commitment to free cash flow generation, financial alignment with stakeholders, environmental and community leadership, and best-in-class governance.
- At closing, Civitas will be Colorado's first net-zero oil and gas producer (scope 1 and scope 2) through an intensive, continuing focus on reducing operational emissions and a multi-year investment in certified emissions offsets.

**CEO COMMENTARY**

"Successful E&P operators will be those who place a priority on disciplined capital deployment, deliver operational and cost excellence, maintain a relentless focus on shareholder value, and have governance standards that are aligned with the times," said Eric Greager, President and Chief Executive Officer of Bonanza Creek. "Bonanza Creek and Extraction each bring a demonstrated commitment to these principles, as well as shared organizational and community values. Together, as Civitas, we will embody an E&P business model ideally suited to deliver for all of our stakeholders."

"We believe the combination of Bonanza Creek and Extraction will create one of the most durable, profitable, and progressive producers in the DJ Basin, with premium assets at the front end of the cost curve," said Tom Tyree, Chief Executive Officer of Extraction. "Collectively, we will create significant value for all stakeholders as we will become Colorado's first net-zero oil and gas producer through the continuing reduction in operational emissions coupled with a multi-year investment in certified emissions offsets."

**TRANSACTION DETAILS**

Under the terms of the definitive merger agreement, Extraction shareholders will receive a fixed exchange ratio of 1.1711 shares of Bonanza Creek common shares for each share of Extraction common stock owned on the closing date. Based on the exchange ratio and the closing price of Bonanza Creek's common stock on May 7, 2021, Civitas would have an aggregate enterprise value of approximately $2.6 billion. Upon completion of the transaction, Bonanza Creek and Extraction shareholders will each own approximately 50.0% of Civitas, both on a fully diluted basis.

The transaction, which is expected to close in the third quarter of 2021, has been unanimously approved by the boards of directors of both companies. Funds managed by Kimmeridge Energy own approximately 38% percent of the

outstanding shares of Extraction and have entered into a support agreement to vote in favor of the transaction. The closing of the merger is subject to customary closing conditions, including approvals by Bonanza Creek and Extraction shareholders.

**STRATEGIC RATIONALE**

- **Enhanced scale and geographic breadth** – Civitas will be the largest pure-play energy producer in the DJ Basin with current production of 117 thousand barrels of oil equivalent per day (117 Mboe/d) and approximately 425,000 net acres. These operations are geographically diversified across rural, less regulatory-intensive areas, as well as more prospective suburban acreage.

- **Significant corporate synergies further reduce basin-leading cost structures** – The combined company expects to generate approximately $25 million in annual corporate synergies, including general and administrative savings, LOE efficiencies, and reduced capital costs. The merger of equals structure allows shareholders of both Bonanza Creek and Extraction to benefit from the cost synergies and significant upside potential of the combined company.

- **Acceleration of cash returns to shareholders** – Civitas represents the next level of an E&P business model that has been actively embraced by both Bonanza Creek and Extraction, and is defined by capital discipline, low cost structure, and a strong balance sheet to maximize free cash flow and accelerate the distribution of a material portion of this cash to shareholders. Disciplined reinvestment rates are expected to yield flat to low production growth in the coming years and generate sufficient free cash flow to support material dividends going forward. Bonanza Creek's recently announced annual dividend of $1.40 per share is expected to be increased by Civitas to $1.60 per share effective at closing, with such increase representing a distribution of approximately half of the transaction synergies to Civitas' shareholder base.

- **Strong balance sheet and liquidity** – The all-stock transaction ensures Civitas will retain a strong balance sheet, with a leverage ratio below 0.3x pro forma 1Q21 Net Debt / 2021E EBITDA, at the time of closing, and Civitas will target leverage of approximately 0.5x over the longer term. Civitas will also have significant liquidity. As of April 1, 2021, Bonanza Creek and Extraction had combined cash on hand of $127 million and combined undrawn capacity under their credit facilities of $651 million. The resulting enhanced credit profile is expected to broaden the combined company's access to the capital markets and reduce its overall cost of capital.

- **Advances consolidation strategy** – Civitas represents a major step in Bonanza Creek's and Extraction's consolidation strategies, which have been pursued in conjunction with the companies' continuing initiatives to reduce unit costs, expand margins, enhance returns, increase financial strength, and grow cash distributions to shareholders. Civitas will be positioned to be the preferred consolidation partner for additional transactions in the DJ Basin, helping to increase its trading liquidity and market relevance, and ultimately to elevate its presence among the top energy producers in the country.

- **Industry-leading commitment to ESG excellence and values** – Civitas will expand on the ESG initiatives pursued by both Bonanza Creek and Extraction, including its commitment to become Colorado's first net-zero oil and gas producer at closing, through continuing reduction in operational emissions coupled with a multi-year investment in certified emissions offsets. Civitas will pursue additional sustainability objectives including the adoption of an electric vehicle (EV) fleet; installation of EV charging stations in its communities; air monitoring and certification through leading organizations such as Project Canary and pursuit of the Responsibly Sourced Gas certification for its natural gas production; the development of community solar facilities; and the financing of a community fund to sponsor local project grants and scholarships. Upon close, Civitas will provide a progressive framework for achieving its ESG targets, which it believes will address the interests of its operating partners, employees, service providers, and the communities in which the combined company operates.

**GOVERNANCE AND LEADERSHIP**

Following the merger, the Civitas board of directors will consist of eight members, four directors from Bonanza Creek and four from Extraction. Extraction's current Chairman, Ben Dell, will be Chairman of the Board, and Bonanza Creek's current President and Chief Executive Officer will be President and CEO of Civitas. The combined company's executive team will include demonstrated leaders from each of Bonanza Creek and Extraction, including: Matt Owens as EVP and COO, Marianella Foschi as EVP and CFO, Skip Marter as EVP and General Counsel, Sandi Garbiso as SVP and CAO, and Brian Cain as VP of External Affairs and ESG Policy. Civitas will be headquartered in Denver.

**ADVISORS**

J.P. Morgan Securities LLC is serving as financial advisor and Vinson & Elkins LLP is serving as legal advisor to Bonanza Creek. Petrie Partners Securities, LLC is serving as financial advisor and Kirkland & Ellis LLP is serving as legal advisor to Extraction.

**Insiders' Interests in the Proposed Transaction**

23.     Extraction insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will receive unique benefits in connection with the Proposed Transaction not available to Plaintiff and the other public stockholders of Extraction.

24.     Notably, certain Company insiders have secured positions for themselves with the combined company.  For example, four current Extraction directors will serve on the board of the combined company, and defendant Dell will serve as Chairman.  Additionally, Extraction President and Chief Operating Officer ("COO") Matt Owens will serve as COO, and Extraction Chief Financial Officer ("CFO") Marianella Foschi will serve as CFO of the combined company.

25.     Moreover, if they are terminated in connection with the Proposed Transaction, Extraction's named executive officers will receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Extraction Name Executive Officer | Cash(1) | Equity(2) | Perquisites/ Benefits(3) | Total |
|---|---|---|---|---|
| Thomas B. Tyree | $ 1,500,000 | 5,952,240 | $ 39,062 | $ 7,491,302 |
| Matthew R. Owens | $ 1,800,000 | 5,952,240 | $ 39,062 | $ 7,791,302 |
| Marianella Foschi | $ 940,000 | 4,662,588 | $ 12,770 | $ 5,615,358 |

**The Proxy Statement Contains Material Misstatements or Omissions**

26.     Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Extraction's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

27.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Extraction's and Bonanza's financial projections and the data and inputs underlying

10

the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Petrie Partners; and (ii) the background of the Proposed Transaction.

***Material Omissions Concerning Financial Projections for Extraction and Bonanza***

28. The Proxy Statement omits material information regarding the Company's and Bonanza's financial projections.

29. The Proxy Statement fails to disclose all line items underlying Extraction's and Bonanza's: (i) adjusted EBITDA; and (ii) levered free cash flow over the projection period.

30. The Proxy Statement also fails to disclose material information concerning Petrie Partner's financial analyses.

31. The Proxy Statement describes Petrie Partners fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Petrie Partners' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Extraction's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Petrie Partners' fairness opinion in determining whether to vote in favor of the Proposed Transaction.

32. With respect to Petrie Partners' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the various discount rates ranging from 8% to 35% used in the analysis; (ii) Extraction's long-term debt and estimated net working capital as of March 31, 2021; and (iii) the estimated synergies expected to be realized in the Proposed Transaction.

33. With respect to Petrie Partners' *Property Transaction Analysis, Corporate Transaction Analysis*, and *Capital Market Comparison Analysis*, the Proxy Statement fails to

11

disclose the individual multiples and financial metrics for each of the transactions and companies observed in the analyses, respectively.

34. With respect to Petrie Partners' *Going Concern Analysis*, the Proxy Statement fails to disclose: (i) Petrie Partners' basis for use of the multiples utilized in the analysis; and (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 11.0% to 13.0% used in the analysis.

35. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

36. The omission of this information renders the statements in the "Certain Unaudited Prospective Financial and Operating Information" and "Opinions of Extraction's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

37. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

38. Specifically, the Proxy Statement fails to disclose whether the Company entered into any confidentiality agreements with any interested bidders during the background process that include "don't-ask, don't-waive" ("DADW") standstill provisions that are still in effect and presently precluding any interested parties from submitting a topping bid for the Company.

39. The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a non-disclosure agreement could make a superior proposal for the Company. If the potential acquirer's non-disclosure agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (a) breaching

the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (b) being released from the agreement, which if the action has been done, is omitted from the Proxy Statement.

40. Any reasonable Extraction stockholder would deem the fact that a potential topping bidder for the Company, may be precluded from making a topping bid for the Company, to significantly alter the total mix of information.

41. The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

42. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Extraction will be unable to make a sufficiently informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

43. Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

44. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

45. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about Extraction's and Bonanza's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Petrie Partners, and the background of the Proposed Transaction. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

46. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

47. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

48. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

49. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

50. The Individual Defendants acted as controlling persons of Extraction within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Extraction and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

53. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their

positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Extraction's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against defendants as follows:

A.  Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B.  In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

| | |
|---|---|
| Dated: October 21, 2021 | Respectfully submitted, |
| | /s/ Richard A. Acocelli |
| | Richard A. Acocelli |
| | **WEISSLAW LLP** |
| | 305 Broadway, 7th Floor |
| | New York, NY 10007 |
| | Telephone: (212) 682-3025 |
| | Facsimile: (212) 682-3010 |
| | Email: racocelli@weisslawllp.com |
| | |
| | *Attorneys for Plaintiff* |